UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELIZABETH FISHER, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF RAY E. FISHER, DECEASED,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 05-cv-4184-JPG |

### MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court on a motion for summary judgment by the United States of America (Doc. 25) and a joint motion for summary judgment by Jackson County and the Jackson County Department of Highways (collectively referred to as Jackson County) (Doc. 31). Elizabeth Fisher, the independent administrator of the estate of Ray E. Fisher, deceased (Fisher), has responded to defendants' motions (Docs. 33, 34). For the following reasons, these motions will be **DENIED**.

### BACKGROUND

Ray E. Fisher (the decedent) died in an automobile accident at the intersection of McMahon Road and Dowell Road (the intersection) in Jackson County, Illinois, on October 4, 2004. His vehicle collided with a vehicle driven by Janice Jeremiah, a rural mail carrier, as she proceeded west on Dowell, into the intersection. Traffic on westbound Dowell was unrestricted; the stop sign that should have been standing on McMahon was on the ground and out of sight. Dowell is larger than McMahon, a narrow gravel road, but the parties disagree over how it should be characterized. The United States refers to Dowell as a "preferential," paved road.

Fisher calls it an "an oil and chip surface," and denies that it was the preferential road.

Fisher claims her decedent had the right of way pursuant to the statute, 625 ILCS § 5/11-901, which gives drivers approaching an unprotected intersection from the right the right-of-way. She contends that by failing to yield to his right-of-way, Jeremiah acted negligently when she entered the intersection. Because Jeremiah was acting within her capacity as a federal mail carrier at the time of the accident, Fisher claims the United States is liable for her alleged negligence. *See* 28 U.S.C. § 2671 *et seq.* Fisher also claims that Jackson County is liable for the accident because it negligently installed the stop sign on McMahon.

## ANALYSIS

**I.     Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotations and citations omitted); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not

demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

II.     **The United States's Motion for Summary Judgment**

Fisher has stated claims against the United States for personal injury and wrongful death. As she has brought these claims under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, Illinois law applies. 28 U.S.C. § 1346(b)(1).

The United States chose only to address the issue of breach in its motion, so the Court will similarly confine its inquiry. According to the United States, Dowell's preferential status clothed Jeremiah with the right-of-way without regard to 625 ILCS 5/11-901. *See King v. Illinois Division of Highways*, 30 Ill.Ct.Cl. 457, 1975 WL 20018 (Ill. Ct. Cl. 1975). More than this, it claims Dowell's status entitled Jeremiah to presume that the decedent would stop before entering the intersection even though the stop sign was down. *See Salo v. Singhurse*, 537 N.E.2d 339 (Ill. App. Ct. 5th Cir. 1989). Thus, it claims Jeremiah did not breach her duty of care when she drove into the intersection.

The United States's position is oversimplified and, ultimately, incorrect. To begin, its claims cannot be accepted because it has not adequately supported its contention that Dowell was the preferential road. It simply assumes – presumably, because McMahon was a narrower, gravel road and Dowell was paved (or had an oil and chip surface) – that Dowell was the preferential road. It offers no case or statutory law to support this proposition, though it is

3

reasonably clear the United States has gleaned a hierarchy of road surfaces from *King v. Illinois Division of Highways*. There, the Court assumed that one of the roads at an intersection was the preferential road because it was a "2-lane concrete pavement and obviously a main road," while the other was "a narrow oiled street obviously . . . of secondary importance." *King*, 1975 WL 20018, at *4. This holding is relevant here, but on the facts before it now, the Court cannot say that McMahon was obviously a road of secondary importance. Depending on the circumstances (*i.e.,* if Dowell was only a few feet wider than McMahon and not divided into two lanes) it might be unfair to presume that the decedent should have recognized Dowell as the preferential road. *See id*. The United States has failed to present the Court with sufficient facts or law to enable it to determine whether the differences between McMahon and Dowell were sufficiently stark to give rise to the presumption in *King*.

When two drivers enter an unprotected intersection (*i.e.*, one without stop signs or other traffic signals) at approximately the same time, the driver of the vehicle on the left must yield the right-of-way to the driver of the vehicle on the right. 625 ILCS 5/11-901. When a stop sign is down or when traffic lights fail at an intersection, an intersection is unprotected for purposes of 5/11-901. *E.g., Spiotta v. Hamilton*, 256 N.E.2d 649, 651 (Ill. App. Ct. 2d Dist. 1970); *Duewel v. Lahman*, 430 N.E.2d 662, 665 (Ill. App. Ct. 2d Dist. 1981). If one assumes that Dowell was not a preferential road, then Jeremiah should have yielded the right-of-way to the decedent, as his vehicle was on her right. Under these circumstances, a jury could certainly find that her failure to do so was a breach of the standard of care.

Even if Dowell were the preferential road at the intersection, the United States would not be entitled to summary judgment on the record before the Court. Though a driver on a non-preferential road intersecting with a preferential road must yield the right-of-way to a vehicle

approaching the intersection on the preferential road, the driver on the preferential road does not have an absolute right-of-way. *Salo*, 537 N.E.2d at 340. She too "must keep a proper lookout, observe due care in approaching and crossing intersections and drive as a prudent person would to avoid a collision when danger is discovered or, by the exercise of reasonable care, should have been discovered." *Id*. at 341. *Salo* itself, one of the three cases the United States cites in its brief, actually lends support to Fisher's position. In *Salo*, the plaintiff saw the defendant progressing toward him and nearing a stop sign on the non-preferential road. *Id*. As the plaintiff was proceeding on the preferential road and saw the defendant approach the stop sign, the court found that the plaintiff was entitled to believe the defendant would stop. The court suggested, however, that such would not be the case if the plaintiff had been proceeding toward the intersection at a rate of speed that would have affected her ability to see the defendant coming. *Id*. Thus, if an individual proceeds through an intersection at an unreasonable rate of speed, such an individual can be negligent without regard to her right-of-way.

This dictum in *Salo* was taken from a long line of Illinois cases which have held that a driver on a preferential road does not have an unqualified privilege to proceed through an intersection with a secondary or non-preferential road. *E.g., Jenkins v. Bobrowicz*, 422 N.E.2d 1132 (Ill. Ct. App. 2d Dist. 1981); *Anderson v. Basham*, 370 N.E.2d 1247 (Ill. App. Ct. 2d Dist. 1977); *Fincham v. Cooney*, 356 N.E.2d 445, 446 (Ill. App. Ct. 3d Dist. 1976); *Gettemy v. Grgula*, 323 N.E.2d 628 (Ill. App. Ct. 1st Dist. 1975); *Thomas v. Consolidated Sch. Dist. # 429*, 286 N.E.2d 536, 541 (Ill. App. Ct. 4th Dist. 1972); *Gary v. Rogers*, 243 N.E.2d 665 (Ill. App. Ct. 2d Dist. 1968); *Pennington v. McLean*, 158 N.E.2d 624, 627-28 (Ill. 1959). Because the right-of-way is not absolute, Illinois courts have repeatedly held that "it is the function of the jury to determine whether the judgment of the driver on the preferential road conformed to the standards

of the reasonable and prudent man." *Fincham*, 356 N.E.2d at 446 (quoting *Conner v. McGrew*, 177 N.E.2d 417, 418 (Ill. App. Ct. 4th Dist 1961)); *see also Grgula*, 323 N.E.2d at 630.

In *Fincham*, the plaintiff's decedent, a passenger in a car on a preferential road with the right-of-way, died when the vehicle in which she was riding collided with a vehicle that ran a stop sign on an intersecting, secondary road. 356 N.E.2d at 445-46. The administrator of her estate sued the administrator of the estate of the driver of the car in which she was a passenger. On appeal, the court found sufficient evidence of defendant's negligence to present that issue to the jury, despite the fact that the defendant was on the preferential road. *Id*. at 447. The court based this conclusion on, among other things, defendant's unobstructed view of the intersection, the absence of skidmarks and the position of her wheels after the accident (they were pointed forward). It found that these circumstances were sufficiently probative of the defendant's negligence to let the case proceed. *Id*.

This conclusion was not unique. In *Grgula*, the defendant, proceeding on a secondary road, stopped at the intersection of that road with a preferential road, and then pulled slightly forward to get a better view of the traffic proceeding on the preferential road. 323 N.E.2d at 629. In doing so, he collided with the plaintiff, who was proceeding on the preferential road. The appellate court upheld the jury's verdict in favor of the defendant. It found that the plaintiff was contributorily negligent because he saw defendant's vehicle at the intersection and failed to honk his horn, slow down or take any other action to avoid the collision. *Id*. at 630. In short, it found sufficient evidence that the plaintiff proceeded recklessly into a known hazard. A similar verdict was upheld in *Anderson v. Basham*. There, the appellate court upheld a defendant's verdict even though the plaintiff, proceeding on the preferential road with the right-of-way, collided with the defendant, who was edging out into the preferential road after stopping at a stop sign. 370

N.E.2d at 1250-51. The court found that the plaintiff's "preferential right-of-way over drivers entering the highway was tempered by a duty to exercise ordinary care in approaching the intersection." *Id*. at 1250. As the evidence suggested that the plaintiff was driving between ten and fifteen miles over the speed limit in heavy traffic, the court upheld the verdict. *Id*. at 1250-51. In *Thomas v. Consolidated School District No. 429*, the court summarized the law as follows:

> the statute requiring a driver to stop at the entrance to the preferential highway and to yield the right-of-way to vehicles proceeding thereon neither imposes absolute liability upon the party driving upon the nonpreferential highway nor an absolute right-of-way, regardless of circumstances upon the party proceeding upon the preferential highway.

286 N.E.2d at 541.

Certain common indicators of negligence emerge in these cases: speeding, failing to keep a proper lookout, failing to brake to avoid an accident and failing to take evasive action to avoid an accident. Richard Allison, a passenger in the decedent's vehicle saw Jeremiah's vehicle approach the intersection and estimated its speed to be approximately 70 miles an hour. Though his testimony is unclear, Mr. Allison seems to indicate that he could see Jeremiah coming at least fifty feet before the intersection. Jeremiah, for her part, testified that she did not see the decedent's car until after the impact. She claims she was driving about 45 miles an hour at the time of the collision and did not brake before she hit the decedent's vehicle. Allison and Jeremiah clearly gave differing accounts of the accident. Though the parties do not refer to the speed limit in their briefs, the Court's review of the record has disclosed that the speed limit on Dowell was 55 miles an hour. If Jeremiah was traveling at 70 miles per hour when she entered the intersection, a jury could certainly find that her conduct was unreasonable. Further, though the exhibits make clear that Jeremiah was driving the larger vehicle (an SUV as opposed to the decedent's Ford Escort), that she did not see the decedent's vehicle approaching (given that

Allison saw her approaching) supports the notion that Jeremiah was not maintaining a proper lookout. Thus, on the facts before the Court now, a jury could find that Jeremiah was speeding, failed to keep a proper lookout, failed to brake to avoid an accident and failed to take evasive action.

Whether Jeremiah was aware the sign was down is a disputed fact. Though she testified at her deposition that she did not know the sign was down, Fisher has introduced testimony from which a reasonable jury could conclude that she was or should have been aware the sign was down. Allison testified that he noticed the stop sign down on August 23, 2004, approximately five weeks before the accident. Deputy O'Leary, an officer who took stock of the accident scene, testified that the grass underneath the downed signed was dead and matted and that "weeds were grown up around" the sign as well. His testimony certainly supports Allison's contention.

Jeremiah drove through this intersection twice a day, five times a week. If Allison's account is believed, she traveled through the intersection at least 50 times without noticing that the sign was down. In light of this evidence, a jury could reasonably choose to disbelieve Jeremiah's testimony. This puts the case in another light entirely. If she knew the sign was down, certainly this would have required her to exercise more caution. The United States based its motion solely on the contention that Jeremiah did not breach the standard of care. As the discussion above shows, a jury could find that Jeremiah breached the standard of care in this case. Her culpability is a question for the jury.

II.     **Jackson County and the Jackson County Department of Highway's Joint Motion**

Jackson County claims that it is immune from Fisher's claims under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-201. Under this Act, "a public employee serving in a position involving the determination of policy or the

exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." As it claims its replacement of the stop sign in 2003 was a discretionary act, *see Francis v. Mills*, 573 N.E.2d 323 (Ill. App. Ct. 3d Dist. 1991), Jackson County contends that it cannot be held liable in this action even if its employees negligently replaced the sign. Like that of the United States, Jackson County's position is oversimplified and, therefore, incorrect.

The Act does not immunize government officials from the negligent performance of their ministerial duties. *Snyder v. Curran Township*, 657 N.E.2d 988, 992-93 (Ill. 1995). Though the distinction is not very clear, ministerial duties are often defined as "those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Id*. at 993. As Illinois has adopted the Illinois Manual on Uniform Traffic Control Devices (the Illinois Manual) and required that those erecting traffic signs comply with its terms, the manner and method of their installation is a ministerial duty. 625 ILCS 5/11-304; *Governmental Interinsurance Exchange v. Judge*, 850 N.E.2d 183, 195, 196 (Ill. 2006); *Snyder*, 657 N.E.2d at 990-91. As stated in *Corning v. East Oakland Township*, 670 N.E.2d 350, 352 (Ill. App. Ct. 4th Dist. 1996), "[O]nce having undertaken the construction of public highways and traffic control devices, public entities have a duty to install and maintain them with reasonable care." *See also Ellison v. Village of Northbrook*, 650 N.E.2d 1059 (Ill. App. Ct. 1st Dist. 1995) (same). Accordingly, Jackson County is not entitled to immunity under the Act.

As Jackson County chose to base its motion solely on governmental immunity, its motion fails. In any event, Fisher has introduced various provisions of the Illinois Manual, the Illinois Department of Transportation's Standard Specifications for Road and Bridge Construction and

the testimony of several experts, which, when coupled with the testimony of Richard Huppert (the Jackson County employee who installed the sign in question), affirmatively demonstrate the existence of disputed material facts precluding summary judgment. Jackson County's motion is **DENIED**.

## CONCLUSION

The United States of America's motion for summary judgment (Doc. 25) and Jackson County and Jackson County Department of Highways's joint motion for summary judgment (Doc. 31) are **DENIED.**

**IT IS SO ORDERED.**

**DATED: October 31, 2006**

                                                                s/ J. Phil Gilbert
                                                                **J. PHIL GILBERT**
                                                                **DISTRICT JUDGE**